# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPHINE JOYCE,<br><br>        Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC.,<br><br>        Defendant. | Case No. 05 C 6596<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Motions for Summary Judgment, the Plaintiff's Motions for Miscellaneous Relief, and the parties' Motions to Strike the opposing side's motion for summary judgment. The Court notes that neither party has filed proper responses to the opposing side's Motion for Summary Judgment, *see* L.R. 56.1(b), resorting instead to filing motions to strike. As the Court indicated in its Order, dated February 28, 2008, Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment is denied and construed as a response to Plaintiff's Motion for Summary Judgment. Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment is also denied.

For the following reasons, Plaintiff's Motion for Summary Judgment and other miscellaneous motions are denied, and Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

The Plaintiff, Josephine Joyce (hereinafter, "Joyce") filed this action against J.C. Penney Corporation, Inc. (hereinafter, "J.C. Penney") for injuries suffered as a result of being hit with a cart while shopping in November 2003. She alleges that as a result of this incident, she sustained new injuries and aggravation of old injuries to her legs, lumbar spine (back), cervical spine (neck), arms, and fingers, and developed a cyst in her left knee and chicken pox or shingles on her eye. Joyce Dep. at 32:4-20, 66:29-24, 67:1-9. She seeks damages for pain and suffering, medical expenses, and inability to engage in various forms of physical activity, among other things. *See* Pl.'s Answers to Interrogatories dated October 17, 2006 and November 14, 2006.

The Court draws the following material facts from its review of the entire record, as well as the parties' submissions. In 1991 or 1992, Joyce was involved in a car accident in which she injured her sciatic nerve. Joyce Dep. at 30:5-16. An MRI from 1992 showed a bulging disc in her cervical spine at C4-C5. Shea Dep. at 24:14-15, 20-21.

In 1997, Joyce fell while working at Union Pacific Railroad and injured her lower back and left leg. Joyce Dep. at 16:3-9; Gafoor Dep. at 19:1-23. During a visit to her primary care physician, Dr. Mohammad Gafoor, on February 27, 1997, she

complained of left leg pain, back pain, and low back tenderness. Gafoor Dep. at 19:6-7, 19-20, 20:23-24. Dr. Gafoor's impression was lower extremity and back pain. *Id.* Joyce continued to have pain in the left leg and back, accompanied by burning, numbness, and radiating pain in March, April, and May 1997. *Id.* at 21:4-12, 22:17-22, 24:5-15, 26:5-10. In October 1997, she reported left elbow pain in addition to continued back pain. *Id.* at 27:7-17. She has complained about problems in her back and legs since about 1997 and about her neck since September 2003. *Id.* at 121:1-11.

In 1998, Dr. Gafoor referred Joyce to a neurosurgeon and orthopedic doctor for an MRI because of pain, numbness, and weakness in her back and leg. *Id.* at 32:7-10, 12-14, 34:17-24. An MRI dated September 10, 1998 showed multi-level degenerative disc changes, including a mild disc bulge at L4-L5 and mild foraminal bilateral stenosis. Espinosa Dep. at 19:1-23. Joyce's diagnosis at that time was acute lumbosacral spine strain with degenerative lumbar disc disease and radiculopathy. Gafoor Dep. at 35:7-9, 36:3; Shea Dep. at 47:17-20. An x-ray film of Joyce's cervical spine dated September 25, 2003 showed arthritic changes at C5-C6 and mild reversal of the cervical lordosis. Espinosa Dep. at 20:1-22. On September 28, 1999, she was also diagnosed with spinal stenosis. Gafoor Dep. at 46:2-10, 47:6.

Dr. Gafoor referred Joyce to Dr. Paul Prinz, an orthopedic specialist, in March 2000. Prinz Dep. at 19:21-24. At that time, Joyce reported to Dr. Prinz that she fell at work several years prior and had significant left-sided lower back and leg pain. *Id.* at 20:6-9, 21-24. Dr. Prinz diagnosed her with a disk bulge at L4-L5 dating back to 1998 and spinal stenosis. *Id.* at 22:6-14.

In July 2003, Joyce reported right shoulder blade pain in addition to continued back pain and leg weakness. Gafoor Dep. at 63:3-9. In September 2003, Joyce reported deep aching in her right little finger, neck, back, and leg pain, but no shoulder pain. *Id.* at 63:18-24, 64:1-10. X-rays of her right hand showed arthritis. *Id.* at 65:4-7. Dr. Gafoor's impression of Joyce's condition remained the same during numerous visits through October 2003. *Id.* at 47-66. On October 30, 2003, she reported back pain radiating across, tingling of the feet, finger pain, and no neck pain. *Id.* at 65:20-22.

On November 1, 2003, while shopping at the J.C. Penney store in Yorktown Mall, Joyce was struck from behind in the left ankle with a rack. Joyce Dep. at 33:3-7, 35:1-7, 37:16-19; 47:13-24, 48:1, 50:3-5. She felt a shock, grabbed hold of a clothing ring in front of her, jerked, swerved, and fell down on her left knee. *Id.* at 48:3-11. She felt stiff but did not feel the need to seek medical attention right away, and she continued shopping. *Id.* at

56-59. Her ankle felt slightly sore when she got home. *Id.* at 59:12-17. The next day, she sought treatment at Gottlieb Hospital because she felt dizzy and had pain in her legs and back. *Id.* at 59:18-23, 60:1-2, 22-24.

Joyce was hospitalized from November 2 to November 4, 2003 for a possible Transient Ischemic Attack ("TIA"). Gafoor Dep. at 74:10-18. Dr. Donald Lussky, a neuromuscular specialist who saw Joyce at Gottlieb on November 3, 2003, stated that her possible TIA and associated numbness and tingling in her left arm and leg were not anatomically related to the foot injury at J.C. Penney. Lussky Dep. at 8:11-16. An EKG, CT scan of her head, and x-rays of her left foot and chest were normal. Gafoor Dep. at 73: 3-15. Her neurological examination was normal. Lussky Dep. at 7:13-16. Dr. Gafoor examined Joyce on November 2, 2003, and found some tenderness in the left lumbar area and on forward bending. Gafoor Dep. at 66:22-24, 67:1-2, 71:11-13. He also documented a left foot injury based on the history she provided, and he testified that it was possible she had a soft tissue injury to her left foot. *Id.* at 75:12-24, 76:1-24, 77:1-24, 78:1-3. When asked whether Joyce's complaints of pain in the left leg and hip were the same as complaints she had made before, Dr. Gafoor stated, "I cannot . . . assess at that time . . . It's very hard to say the same pain or new pain or different pain." *Id.* at 69:10-16. Dr. Gafoor's impression during her next visit on

November 13, 2003 was that she had a left ankle sprain. *Id.* at 79:13. Her left ankle ligament was tender, and her range of movements was painful. *Id.* at 79:9-11. Dr. Gafoor suggested that she use an Ace wrap and prescribed medication for her ankle. *Id.* at 79:13-15.

On June 10, 2004, Dr. Gafoor referred Joyce to an ophthalmologist, Dr. Timothy McCarthy, for Herpes Zoster Ophthalmicus (what Joyce refers to as chicken pox or shingles) of the left eye. *Id.* 84:4-8, 85:1-17. Dr. McCarthy could not give an opinion that this problem was caused by the J.C. Penney incident, and he thought that it was "very unlikely" and "very, very remote." McCarthy Dep. at 22:13-24, 23:1-10.

On July 15, 2004, Joyce saw Dr. Nikola Ivancevic, a podiatrist, for her ankle pain. Dr. Ivancevic diagnosed Joyce with anterior talofibular and calcaneofibular tendonitis on the left ankle, and he recommended that she ice, rest, pad, and elevate it. Ivancevic Dep. at 12:12-16, 13:10-12, 24:11-24. On her next visit on October 4, 2004, he found that she still had some tendonitis but that the ankle was resolving. *Id.* at 27:21-24, 28:1. Dr. Ivancevic could not give an opinion to a reasonable degree of medical certainty as to what caused her tendonitis or that the J.C. Penney incident caused her ankle pain or tendonitis. *Id.* at 31:12-18, 32:10-15; 35:18-24, 36:1.

In February 2005, Joyce saw Dr. Prinz again for pelvic pain, and an MRI of her hip showed degenerative changes. Prinz Dep. at 23:21-23; 27:21-24. On March 4, 2005, Dr. Prinz indicated that she might have lumbar radiculopathy, based on her complaints and the 1998 MRI of her lumbar spine. *Id.* at 31:15-18, 32:15-19. During a visit on November 1, 2005, Joyce told Dr. Prinz that she thought her pain might be due to the incident at J.C. Penney, but Dr. Prinz could not determine the specific cause of her complaints at that time. *Id.* at 36:5-24, 37:1-5.

During visits with Dr. Gafoor through 2006, Joyce continued to have hypertension, back pain, leg pain, occasional neck pain, tingling, and numbness. Gafoor Dep. at 79-101. An MRI of Joyce's lumbar spine dated February 17, 2006 showed a large bilateral herniated disc at L2-L3 on the left side. Espinosa Dep. at 36:1-8; *see also* Gafoor Dep. at 101:10, 18-19 (x-ray report from March 2006 showing the same). Dr. Francisco Espinosa Becerra, a neurosurgeon to which Joyce had been referred by Dr. Gafoor, stated that her back and leg pain was due to the herniated disc. Espinosa Dep. at 36:14-19, 91:10-23. He also noted that although the findings in the 2006 MRI report at the L4-L5 and L5-S1 level were similar to the findings in the 1998 report, the findings at the L2-L3 level were not. Espinosa Dep. at 39:3-11. He stated that the 2006 report showed a herniated disc at L2-L3 that appeared only as a mild bulging in the 1998

report. *Id.* at 65:2-24, 66:1-6, 11-15; *see also* Prinz Dep. at 66:13-24, 67:1-3; Shea Dep. at 24:10-22. Dr. Espinosa could not say whether Joyce had those herniations prior to November 2003, and he stated that "the only way to be able to determine that is if there's any document stating that she had that herniation before November of 2003." *Id.* at 65:15-21; *see also* Blonsky Dep. at 58:19-24, 59:1-7.

None of Joyce's physicians could give an opinion to a reasonable degree of medical certainty as to the date of the onset of her herniated discs, other than the fact that the MRI dating from 1998 showed degenerative disc disease. Gafoor Dep. at 102:4-7; Shea Dep. at 22:21-24, 23:1; 25:9-11; 47:17-20; Ubilluz Dep. at 15:18-23; Lussky Dep. at 18:21-23; Espinosa Dep. at 53:11-24, 54:1-4, 63:5-10; Molnar Dep. at 69:3-10; Blonsky Dep. at 53:2-8.

A few physicians testified that it was possible that the incident caused some of Joyce's injuries. Dr. Espinosa testified that it was possible that the J.C. Penney incident caused her to herniate a disc in her lumbar and cervical spine, depending on how exactly she fell. Espinosa Dep. at 67:7-11, 68:3-6. He diagnosed her with cervical and lumbar sprains, *id.* at 69:6-9, and stated that "[j]ust from the description of the incident, it is possible that she may have sustained the cervical and lumbar sprain during that attempt to prevent the fall, so, bracing and

twisting her body. So it's possible that she may have sustained it, yes." *Id.* at 70:16-21. Dr. Rodrigo Ubilluz, a neurologist who first saw Joyce in November 2006 and was not aware of her history, stated that assuming that she was not having any disc herniation and degenerative joint problems prior to the J.C. Penney incident, he would have to conclude that that incident was the cause of her present symptoms. Ubilluz Dep. at 6:17-21; 17:1-7; 33:2-11. However, he stated that his opinion may change if she had similar symptoms prior to this incident and if he were made aware of her prior work injury. *Id.* at 17:11-16.

None of Joyce's physicians could give an opinion to a reasonable degree of certainty that the incident at J.C. Penney was the cause of any specific injury, such as her herniated discs, sprain in the lumbar or cervical spine, neck problems, or her lower extremity symptoms. *See* Prinz Dep. at 57:8-22; 59:11-14; Gafoor Dep. at 125:17-22; Shea Dep. at 23:2-4; 49:7-19; Ubilluz Dep. at 23:10-14; Espinosa Dep. at 67:15-20, 68:7-16, 69:22-24, 71:1-6, 88:18-19; Blonsky Dep. at 55:19-24, 56:1-14; Molnar Dep. at 70:1-11. Dr. John Shea, a neurologist, could not give an opinion that her condition was made worse by the J.C. Penney incident. Shea Dep. at 51:6-7. Dr. Lussky stated, "if she never had any leg pain or back pain prior to being injured at J.C. Penney, I would say within a reasonable degree of medical certainty her back pain and leg pain was due to the J.C. Penney

incident. But if she's had previous back pain and was recently complaining of back pain prior to being injured at J.C. Penney, I could not say with a reasonable degree of medical certainty the injury at J.C. Penney caused the back pain." Lussky Dep. at 13:20-24, 14:1-4.

On August 10, 2006, Joyce had an MRI of the back of her knee which showed a popliteal or Baker's cyst and some minimal degenerative changes. Prinz Dep. at 41:18-24, 41:1-2. Dr. Prinz testified that such a cyst "is fluid that leaks out of the knee joint probably from some tear in the capsular lining of the knee, . . . that [he's seen] it associated with a torn cartilage, and . . . arthritis." *Id.* at 42:7-13. Dr. Prinz stated that he did not know the definitive cause of the cyst, *id.* at 42:18-22, that the most common cause is osteoarthritis, but that they can be caused by trauma, *id.* at 43:20-24, 44:1-4. He had no opinion on whether Joyce's cyst was caused by the injury at the J.C. Penney store three years prior. *Id.* 44:17-24; 45:1, 59:16-22.

By December 28, 2006, Joyce's diagnosis included hypertension, lumbosacral disease, radiculopathy, cervical radiculopathy, left shoulder pain, and joint degenerative disease. Gafoor Dep. at 114:23-24, 115:16-19. A January 2007 MRI of her cervical spine showed several herniations from C2 to C7. Ubilluz Dep. at 21:3-21. Dr. Ubilluz stated to a reasonable

degree of medical certainty that the 2007 cervical herniations were not caused by the incident at J.C. Penney. *Id.* at 23:1-14.

With respect to Joyce's depression, she was diagnosed with anxiety and possible depression as early as March 1998. Gafoor Dep. at 30:1-24, 31:1-13. She saw Dr. Kenneth Lofland, a clinical psychologist on May 11, 2006, for a psychological evaluation in connection with her complaints of pain. Lofland Dep. at 18:10, 21:16-18. Dr. Lofland diagnosed her with a major depressive disorder and stated that although there seems to be a link between the 2003 injury and the appearance of her symptoms, he could not give an opinion with certainty as to the cause. *Id.* at 60:3-24. He stated that if she had no symptoms prior to the incident, then it would be more reasonable to make a statement that the incident resulted in the pain which resulted in depression. *Id.* at 60:20-24, 61:1.

With respect to whether Joyce suffered any injury as a result of the incident, Dr. Prinz testified that he was certain that the incident caused an injury and some pain; he just could not say what specific injury she suffered, Prinz Dep. at 61:1-2. Dr. Prinz stated:

> I do think she had an injury in 2003 that did cause pain, so I wouldn't go that far [to say she suffered no injury at all]. I think she did have an injury that caused her some pelvic and lumbar pain. I just don't know that the radicular symptoms or the knee pathology, I can't state definitively that those were caused by her injury. I have no

> doubt that she did have an injury in my mind, and I think I could state with medical certainty she did have some injury to her body on that date.

*Id.* at 60:8-23. He did not think that it was possible for any orthopedist to state definitively the cause of her current condition several years after the injury. *Id.* at 58:17-23. He testified that her lower extremity symptoms were multi-factorial and that it was possible some component was a previous injury and also possible that her condition was exacerbated by the 2003 incident. *Id.* at 58:9-23.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

"To sustain a cause of action for negligence, plaintiff must establish the existence of a duty owed by defendant to plaintiff, a breach of that duty and an injury to plaintiff proximately caused by the breach." *Simmons v. American Drug Stores, Inc.*, 768 N.E.2d 46, 51 (Ill.App.Ct. 2002). Here, Defendant argues that Joyce has failed to provide any evidence of proximate cause. *See* Def.'s Mem. at 2. "Proximate cause is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be determined as a matter of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them." *Simmons*, 768 N.E.2d at 53. "[U]nder Illinois law, [p]roximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury." *Henderson v. Sheahan*, 196 F.3d 839, 852 (7th Cir. 1999).

There is no evidence that the J.C. Penney incident caused the cyst behind Joyce's knee, the herpes zoster opthalmicus on

her eye, arthritis in her finger, or her depression. With respect to the injuries to Joyce's back, left leg, and lumbar and cervical spine (including disc herniation or sprain), some of Joyce's doctors stated that it was possible these injuries were caused by the incident, but they could not say so with reasonable certainty. There is no other evidence from which a jury could infer that these injuries were proximately caused by the incident; Joyce had been suffering from degenerative disc disease and back and leg pain for years prior to the incident. *Cf. Scholle v. Continental Nat. American Group*, 358 N.E.2d 893, 898 (Ill.App.Ct. 1976) (holding that although plaintiff's medical expert could not give an opinion based on a reasonable degree of medical certainty that decedent's fall caused ruptured aneurysm which resulted in her death, medical evidence that fall could have caused rupture, along with circumstantial evidence that decedent had previously been in good health and that symptoms of ruptured aneurysm first appeared immediately after the fall presented jury question as to whether death was caused by accident). Thus, Defendant's Motion for Summary Judgment with respect to Joyce's claim for these injuries is granted.

With respect to Joyce's claim for pain and suffering, however, Defendant's Motion is denied. There is a genuine dispute of material fact. Dr. Gafoor testified that he could not give an opinion to a reasonable degree of medical certainty that

Joyce sustained any type of injury as a result of the J.C. Penney incident. Gafoor Dep. at 125:13-22. However, Dr. Prinz testified with certainty that Joyce suffered *some* injury as a result of that incident, and that this caused her pelvic and lumbar pain. Prinz Dep. at 60:8-23. He just could not state definitively what *specific* injury she suffered, including whether her radicular symptoms or knee problems were caused by the injury. *Id.* He also testified that her lower extremity problems were multi-factorial, meaning that some part of her condition was due to preexisting disc disease, but that some part of it may have been exacerbated by the 2003 incident.

### B. Plaintiff's Motion for Summary Judgment

Defendant did not file an opposing statement of facts as required by Local Rule 56.1(b)(3), but even accepting all of the facts set forth in Plaintiff's statement of material facts, Plaintiff has not presented sufficient evidence in support of each element of her claim. As discussed above, there exists a genuine issue of material fact. Plaintiff's Motion for Summary Judgment is denied.

### C. Plaintiff's Other Motions

Plaintiff filed motions for "Decision on Defendant's Counsel's Bias/Prejudice" and "Decision on Defendant's Counsel's Deceit/Fraud." She submitted additional documents in support of these motions on April 22 and 25, 2008. Plaintiff's motions lack

any factual or legal basis and are denied. Defendant's counsel did not act inappropriately in questioning Plaintiff's physicians regarding her medical condition, including whether she was on disability, during their depositions. Plaintiff's medical condition is relevant to this case. Defendant's request for Rule 11 sanctions against Plaintiff for making "defamatory" comments about counsel is denied.

## IV.  CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment [101] is denied. Defendant's Motion for Summary Judgment [107] is granted in part and denied in part. Plaintiff's Motions for Miscellaneous Relief [114, 115, 125, 127] are denied. The Motions to Strike [103, 118] of both parties are denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** June 25, 2008